**John P. MATCHIE, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 99–4004–RDR.**

United States District Court, D. Kansas.

April 4, 2000.

Richard D. Charlton, Sr., Thomas J. Leising, Topeka, KS, for John P Matchie, plaintiff.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for Social Security, Commissioner of, defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action to review a final decision by the Commissioner of Social Security regarding plaintiff's entitlement to disability insurance benefits and supplemental security income (SSI) benefits under the Social Security Act. The parties have briefed the relevant issues and the court is now prepared to rule.

### I.

Plaintiff filed an application for disability and SSI benefits on September 21, 1995. He alleged that his disability began on December 31, 1988. Plaintiff indicated that he was disabled due to hearing loss, hernia problems, low back pain, rhino sinusitis, hemorrhoids, memory loss, and history of alcohol abuse. Plaintiff's application was denied initially and on reconsideration by the Social Security Administration (SSA). A hearing was ultimately conducted by an administrative law judge (ALJ) on plaintiff's application. On April 23, 1997, the ALJ determined in a written opinion that plaintiff was not entitled to disability or SSI benefits. On November 4, 1998, the Appeals Council of the SSA denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

### II.

■ This court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir.1996) (quoting *Richard-*

*son v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, the court cannot weigh the evidence or substitute our discretion for that of the Commissioner, but we have the duty to carefully consider the entire record and make our determination on the record as a whole. *Dollar v. Bowen,* 821 F.2d 530, 532 (10th Cir.1987).

The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. *Reyes v. Bowen,* 845 F.2d 242, 243 (10th Cir. 1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir. 1989). The burden of proof is on the claimant through step four; then it shifts to the Commissioner. *Id.*

### III.

Plaintiff was born on June 7, 1941. He is a high school graduate with additional training in welding. He has previously worked as a hotel housekeeper, hotel reservations clerk, janitor, security guard, heavy equipment operator and chauffeur. He has worked at various times from 1993 to 1997.

Prior to 1980, plaintiff had a history of chronic alcoholism. He suffered a variety of personal problems as well as other problems due to his alcoholism. In 1980, he successfully completed an alcohol detoxification program and has not had any alcohol since December 19, 1980.

On August 28, 1980, plaintiff was admitted to Stormont Regional Medical Center after he was run over by a semi-trailer truck. He suffered multiple injuries including a comminuted fracture of the pelvis. He was released from the hospital on September 4, 1980. He was released ambulatory on crutches with no significant pain medication.

In February 1988, plaintiff had hernia surgery. In July and August 1988, he sought medical treatment, complaining of right groin pain. He was instructed to apply heat to the hernia site and to avoid heavy lifting for several days.

On September 12, 1988, plaintiff again sought medical treatment. This time he complained of back pain, especially when sitting. He was given Tylenol for the pain. On September 12, 1988, plaintiff was assessed with a sacral strain and told to apply heat to his back. He was allowed to return to work, but instructed to do no heavy lifting.

During 1990, plaintiff sought medical treatment several times. His complaints were based primarily on sinus problems, headaches and back pain. He was given sinus medication for his sinus problems and either ibuprofen or acetaminophen for his back pain and headaches. He continued to make similar complaints in 1992 and 1993.

Plaintiff was admitted to St. Francis Hospital and Medical Center on August 26, 1994 with complaints of abdominal pain. He was diagnosed with acute appendicitis. An appendectomy was performed. He was released on September 3, 1994 in good condition.

On February 15, 1995, plaintiff was seen by Kirk M. Wanless, M.D. Plaintiff reported a history of bilateral hearing loss, nasal congestion and nasal surgery in 1978. Dr. Wanless determined that plaintiff had hearing loss, rhino sinusitis and nasal congestion. He indicated that plaintiff could benefit from both ear surgery and sinonasal surgery, and recommended a CT scan of plaintiff's mastoids and sinuses.

In August 1995, plaintiff was seen at the Indian Health Clinic. He complained of sleep disturbances, fatigue, concentration problems, irritability and depression. He also wanted to quit smoking. He was

smoking a pack of cigarettes a day. He was given anti-depressant medication.

On October 13, 1995, plaintiff reported to the Indian Health Center that the anti-depressant medication had calmed him and that he was doing well with his depression. On October 16, 1995, plaintiff complained of right groin and back soreness. He reported that he was walking upstairs carrying a laundry basket and felt a burning sensation in his right lower quadrant into his groin. Plaintiff had tenderness to palpation at L3–5. He was diagnosed as having a muscle strain. On October 26, 1995, he reported that his groin area had improved, but he still suffered some back pain.

Plaintiff was seen by Stanley I. Mintz, Ph.D., on October 26, 1995 for a consultative psychological examination. Plaintiff reported that he had problems with anger, depression, irritability and poor concentration. Plaintiff complained of physical problems including a bad back, a hernia, and hearing difficulty. Plaintiff also claimed that he had memory problems. Plaintiff further reported social withdrawal, crying spells once a month, sadness, low motivation and suicidal ideation, but no history of suicide attempts. Plaintiff stated that he worked for about fifteen hours per week doing maintenance work and house-cleaning at a hotel.

Dr. Mintz did not find much support for plaintiff's claims of hearing loss or memory loss. He noted that he had not spoken particularly loud during the examination and that plaintiff had appeared to follow the conversation very well and did not ask him to repeat any words. He also noted that plaintiff had been able to recall that he had been hit by a semi-trailer truck on August 27, 1980, and that he had stopped drinking alcohol on December 19, 1980.

Dr. Mintz found that plaintiff was alert to time, place, person and situation. He determined that plaintiff did not appear psychotic, but that he did appear depressed. He further found that plaintiff functioned within the borderline range of intelligence. Plaintiff noted the correct date, could name the present and past presidents, recite the alphabet, and count backwards from twenty to one without error. Plaintiff did make three errors while counting from one to forty by serial threes. Plaintiff's abstract verbal reasoning, judgement, and reasoning capability appeared grossly intact. Dr. Mintz opined that plaintiff appeared capable of relating adequately to co-workers and supervisors, understanding simple and intermediate instructions, and concentrating on such instructions for a four to eight-hour time period. Dr. Mintz diagnosed plaintiff with (1) mild dysthymia, which is a mood disorder characterized by depressed feeling and loss of interest in one's usual activities; (2) alcohol abuse, in remission; and (3) various medical complaints, by plaintiff's account. He assessed a current Global Assessment Functioning (GAF) value of 72. In terms of degree of severity of symptoms or functional impairment, GAF scores of 41 to 50 represent "serious;" scores of 51 to 60 represent "moderate;" and scores of 61 to 70 represent "mild." Scores of 90 or higher represent absent or minimal symptoms or impairment.

During November 1995, plaintiff was seen at the Indian Health Clinic and counseled concerning his depression. He noted that he had "good weeks" and "bad weeks." In the latter part of November, 1995, plaintiff complained of sinus congestion and ear infection problems. He was given a decongestant. Plaintiff stated that he had discontinued using his anti-depressant medication.

On December 9, 1995, plaintiff was seen by Niranjan Baxi, M.D. for a consultative disability examination. Plaintiff reported a fifteen-year history of back pain which radiated into both legs, but was not aggravated by coughing or sneezing. Plaintiff

further stated that he could sit for thirty minutes, stand for one hour, and walk one mile at a time. Plaintiff further informed Dr. Baxi that he had smoked up to two packs of cigarettes a day for thirty-five years.

Dr. Baxi found that plaintiff was positive for hearing loss, but that plaintiff could hear conversational speech without limitation. Dr. Baxi noted that plaintiff's walking was unimpaired. Abdominal, chest, heart, eye, extremities, neck and musculoskeletal examinations were normal. Dr. Baxi determined that plaintiff suffered pain in the lumbar spine. Straight leg raising was 90 degrees bilaterally without paraspinous muscle spasm. Plaintiff had no difficulty getting on and off the examining table, heel and toe walking, squatting and rising, or hopping. Dr. Baxi diagnosed lumbar arthralgias. He noted pain in the lumbar region with normal range of motion. He did not find any suggestions of nerve root irritation. An x-ray of the lumbar spine showed moderate narrowing of the lumbosacral disc space with minimal narrowing seen at L3–4 and L4–5. End plate spurring was noted at all three levels, but was most pronounced at L5–S1. There was evidence of mild lower lumbar facetal arthrosis, most pronounced at L4–5 on the right.

On February 6, 1996, plaintiff reported to the Indian Health Clinic that he had twisted his back the previous Saturday and he was suffering low back pain. He was prescribed Motrin. On March 8, 1996, plaintiff reported that the left side of his neck was sore. His neck was tender and painful to palpation. He also complained of itchy, watery eyes. Medical personnel diagnosed neck strain and conjunctivitis. On March 28, 1996, he again reported that he was having back pain. He was instructed to put heat on his back and to get some bed rest. Plaintiff again reported back pain on June 4, 1996. He stated that the pain was caused when he walked off a curb and took a jarring step. In August 1996, plaintiff had sinus problems again. He also complained of a sore back. On September 3, 1996, plaintiff reported that he had stepped on a rock and twisted his back causing low back pain. Somatic lumbar dysfunction was diagnosed, and pain medication and a muscle relaxant were prescribed. Sinus and back problems continued over the next few months.

On December 30, 1996, plaintiff complained of pain and numbness in his third through fifth fingers, right wrist pain, sinus congestion, and a swollen-feeling face. Plaintiff was diagnosed with chronic sinusitis and possible carpal tunnel syndrome. He was given nasal spray, allergy medication, pain medication, and a splint for his right wrist. On January 30, 1997, plaintiff reported that his sinuses felt much better and his facial tenderness was decreased. His ears felt fine. Plaintiff reported right wrist pain after making beds. He, however, admitted that he did not like wearing the splint that had been provided. He further indicated that ibuprofen helped his pain.

On February 27, 1997, plaintiff again complained to the Indian Health Center that he had low back pain. He indicated that he had twisted wrong on the previous day. He continued to make complaints of low back pain through the end of February. On March 10, 1997, plaintiff indicated that his back hurt and that he could hardly get up in the morning. On March 14, 1997, he reported that his back was still sore, but he was moving much better.

Plaintiff was seen by Sharon McKinney, D.O. on June 27, 1997. Plaintiff reported that he could not work due to back pain and fatigue. He noted a history of back pain, ear problems and hernia surgeries. He noted that he had a ganglion cyst on his right hand. He further stated that he was an alcoholic, but that he stopped drinking in 1980. He indicated that he

currently worked as a housekeeper at a hotel for two to three hours a day. He noted that bending and reaching hurt his back. He stated that he could only walk four or five blocks without back pain and his legs giving out. He was able to sit, but had increased pain with walking, standing, exercise of any type, bending, housecleaning, working or lifting. He took ibuprofen for his pain, sinus medication, and blood pressure medication. During the physical examination, Dr. McKinney noted that plaintiff's gait was adequate, although wobbly with heel, toe and tandem walking. Plaintiff had a slight limp to the right. Range of motion in his lower extremities was adequate. Range of motion and strength in his neck were also adequate. Upper extremity strength was normal except in the left biceps and latissimus dorsi. Plaintiff could grip eighty pounds with his right and left hands, and could pinch twenty-five pounds on the right and twenty-four pounds on the left. Dr. McKinney reached the following conclusions:

> From his physical exam he will be somewhat limited. He should not be doing heavy activities. He should not do bending, lifting, stooping, squatting, etc., particularly due to the weakness in the leg. He can walk 5 to 15 minutes depending on the type of surface and how tired he is. He could [sic] that maybe 4 or 5 times a day. He could do that 2 to 4 hours a day if he varies that activity with sitting. Standing he could do 5 to 10 minutes at a time again 2 to 4 hours a day only standing 5 minutes a couple or 3 times an hour. Sitting he could do much longer although he would need to scrunch around and change positions as needed. Jobs [sic] the require continuous bending and twisting of the back he will be limited in how much of that he can do. He is limited to 20 lbs. Due to the hernia surgeries and I recommend that be 2 handed and if he is doing anything 1 handed then the limit would be 10 to 15 lbs. He should rarely do

ladders or stairs and I recommended he hold onto the rail going up and down stairs. I do not see anything on exam or in the record that leads me to believe he is able to do sedentary work due to his low intellectual level of function.

The record contains a detailed diary compiled by plaintiff for the period from May 21, 1996 through January 21, 1997. On each day during this period, plaintiff set forth what activities he was able to perform and his assessment of his pain.

At the hearing before the ALJ, plaintiff testified that he was fifty-five years old and that he had been disabled since December 31, 1988. He became disabled on that date as a result of lower back pain, right wrist problems and appendix and hernia surgeries. He stated that he has performed various work from 1988 to the present. In 1989, he worked as a heavy equipment operator for a construction company. From 1992 to 1995, he worked as a security guard and shop cleaner. He has worked at a hotel from April 1995 to the time of the hearing. His job duties included making beds, cleaning bathrooms, vacuuming, maintenance, and watching the front desk. He made $100 per week and lived at the hotel for free.

Plaintiff stated that he wears a brace on his right wrist for four to five hours per day. He noted that the brace helped his symptoms. He indicated that his fingers locked up and cramped if he held a pencil too long. He claimed he could not pick up a gallon of milk with his right arm, but could with his left arm. He also said he could carry a bag of groceries with his left arm.

Plaintiff stated that he can only walk three blocks, even though one doctor told him to walk two miles a day. He indicated that he could stand for thirty to forty-five minutes and sit for one hour before he had to stand up. He stated that sitting hurts his lower back and makes his legs numb.

His back also hurts when he lays down. He described his back pain as sometimes sharp and sometimes aching. He said his body felt weak and he had to sit down or lie down and sleep for thirty minutes to one hour every day, although no doctor had told him this was required. He took ibuprofen, but did not take any other pain medication. He has worn a middle-waist brace since 1980, which protected his back when he worked. He rated his pain as a seven to nine on a scale of one to ten on most days. On the lightest days, he rated his pain as a six.

Plaintiff also noted difficulties in breathing, thinking and hearing. He indicated that he had problems following directions and with his memory. He smoked about one package of cigarettes a day. He used an inhaler about once per week due to sinus and breathing problems. He also used nasal spray and took Sudafed for congestion.

Plaintiff's daily activities consisted of sleeping, watching television and trying to walk. He also cleaned six to ten hotel rooms in the mornings. Sometimes in the afternoons he went to Topeka with his brother or slept or watched television.

Susan Matchie, plaintiff's wife, also testified at the hearing. She stated that she was the manager of the hotel where plaintiff worked. She claimed she did most of the work at the hotel to cover for plaintiff due to his back pain. She testified that plaintiff worked under special conditions at the hotel and would not be working if the owner knew she covered for him all the time. She also stated that plaintiff earned over $5,000 in 1996, and made $105 per week before taxes. Rooms at the hotel rented for $28 to $50 per night.

Roland Matchie, plaintiff's brother, testified that he worked with plaintiff as a night watchman. He indicated that their boss allowed plaintiff to lie down, walk and sit as needed. He testified that plaintiff's job as shop cleaner was also very flexible and accommodated his deficiencies. He stated that plaintiff had to stop and rest after sweeping with a small broom for fifteen to thirty minutes. He further stated that he used to take plaintiff for rides in his car, but lately plaintiff did not want to go because of his back pain. He drove plaintiff to the hearing and had to stop about three times to allow plaintiff to walk and stretch. He claimed he noticed a deterioration of plaintiff's work habits over the pasts few years and a deterioration of plaintiff's physical capabilities since 1980.

Amy Salva, a vocational expert, also testified at the hearing. The ALJ posed a hypothetical question based on an individual of plaintiff's age, education and work experience who could perform light work with a sit/stand option. In response, Ms. Salva testified that the individual could perform his past work as a reservations clerk or a security guard as those jobs are performed in the national economy. She indicated also that such a person could perform other jobs in the national economy including parking lot attendant, photocopy machine operator, and hand packager. She noted that these jobs exist in significant numbers in the state of Kansas and in the national economy.

The ALJ initially determined that plaintiff had been engaged in substantial gainful activity since 1993 and was therefore not entitled to benefits. The ALJ, however, also decided whether plaintiff was disabled. The ALJ concluded that plaintiff did not suffer from a listed impairment, but that he did have degenerative disc and joint disease in the lumbosacral spine with residual complaints of pain; hearing loss in his right ear from a perforated tympanic membrane not requiring a hearing aid and not adversely impacting most conversational tones; alcoholism in remission for many years; and mild dysthymia which does not constitute a severe impairment. She found that plaintiff's complaints of dis-

abling pain were not credible in light of plaintiff's medical history including the objective medical evidence, the comments of his treating and examining physicians, his daily activities, and his medication regimen. She concluded that plaintiff retained the residual functional capacity for a range of light work where he needs to be able to sit and stand optionally throughout the eight-hour work day. She further found that plaintiff had not met his burden of proving that he was incapable of performing his past relevant work as a security guard or hotel clerk. Accordingly, the ALJ decided this case at step four and concluded that plaintiff was not disabled.

## IV.

Plaintiff contends that the ALJ erred in finding that he had engaged in substantial gainful employment from 1993 through the date of the hearing. He further argues that the ALJ erred in concluding that he retained the residual functional capacity to perform his past relevant work. Finally, he asserts that the ALJ erred in not giving proper consideration to his testimony concerning his disabling pain.

The court will initially turn our attention to the issue of whether the ALJ correctly determined that plaintiff was not disabled. If we find that substantial evidence does not support that decision, then we will consider whether plaintiff has engaged in substantial gainful activity since 1993.

■ The ALJ concluded that plaintiff retained the residual functional capacity to do light work where he could sit and stand optionally to avoid any prolonged positioning problem. In reaching this conclusion, the ALJ noted that (1) no treating or examining physician has provided an opinion that plaintiff is disabled from any impairment or combination of impairments; (2) no surgical procedure has been recommended; and (3) no significant pain medication has been prescribed. The ALJ also determined that the objective medical evidence does not support a disability finding. She noted that plaintiff does suffer from degenerative joint and disc disease in the spine, but objective testing showed a normal range of motion without atrophy or any reflex dysfunction. She further found plaintiff's significant work activity inconsistent with disability. She noted that he continues to engage in a wide range of activities. She further found that plaintiff's complaints of pain were inconsistent with his medication regimen.

The court has undertaken a thorough review of the medical evidence and determined that the ALJ's decision is supported by substantial evidence. Plaintiff does suffer from some physical impairments, but we are not persuaded that he is disabled by them. The ALJ carefully examined the medical reports and considered the relevant portions of them. All of the doctors that examined plaintiff suggested only that any work performed by plaintiff would have to include certain limitations. The ALJ considered these limitations in determining that plaintiff retained the residual functional capacity to perform some jobs.

■ The court also finds that the ALJ properly evaluated the credibility of plaintiff and his witnesses. In evaluating the credibility of a claimant, an ALJ must consider and weigh a number of factors in combination. *See Huston v. Bowen,* 838 F.2d 1125, 1132 & n. 7 (10th Cir.1988). The court recognizes that the ALJ is " 'optimally positioned to observe and assess witness credibility.' " *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias v. Secretary of Health and Human Services,* 933 F.2d 799, 801 (10th Cir. 1991)). Therefore, the court may overturn such a credibility determination only when there is a conspicuous absence of credible evidence to support it. *See Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir. 1992). The court finds that the ALJ's

credibility determination of plaintiff's testimony was properly linked to substantial evidence in the record.

In sum, the court finds that the Commissioner's decision that plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence. With this decision, the court need not consider the alternative ruling that plaintiff is not entitled to benefits because he has engaged in substantial gainful activity since 1993.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is hereby affirmed.

**IT IS SO ORDERED.**